UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON HARRIS, as Special Administrator of the Estate of ANDRE LEPINAY, deceased, | ) ) ) |
| Plaintiff, | ) 16 C 10695 ) ) Judge Gary Feinerman |
| vs. | ) ) |
| CITY OF CHICAGO, MATTHEW KENNEDY, DERRICK DENTON, JESUS GONZALEZ, DAVID McKEE, JAIRO VALERIANO, SHARLYN HAMPTON, RODOLFO VARGAS, BRIAN J. McENERNEY, and AYOKUNLE AKINBUSUYI, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Andre Lepinay brought this 42 U.S.C. § 1983 suit against the City of Chicago and nine Chicago police officers, alleging that they violated the Fourth Amendment by using excessive force against him when executing a search warrant at his apartment. Doc. 1. After Lepinay died, the court appointed his niece, Sharon Harris, as the special administrator of his estate for the purpose of continuing the suit. Doc. 27. Although Lepinay was not deposed before he died, he did give a sworn interview to an investigator with the City's Independent Police Review Authority ("IPRA"). Harris moves for a pretrial determination that an electronic recording of the interview is admissible in evidence. Doc. 35. The motion is granted.

The alleged excessive force took place on October 21, 2016. Doc. 1 at ¶ 13. One week later, on October 28, Lepinay gave his sworn interview to the IPRA investigator. Doc. 35 at 2. Lepinay told the investigator that he was sitting in the living room when the officers entered, that three officers immediately "bum rushed" him, with one jabbing him in the stomach with a rifle, and that the officers then took him to the floor, with one kneeing him in the back. *Id*. at 4-5.

1

Lepinay also stated that he had recently been diagnosed with advanced liver cancer and had "c[o]me home to die." *Id*. at 13, 20. After the interview, Lepinay signed an affidavit in which he "sw[ore] or affirm[ed], under penalties provided by law, that the information contained in … [his] electronically recorded statement, [was] true and accurate." *Id*. at 32. He filed this suit some three weeks later, on November 17, 2016, and died in April 2017. Doc. 20.

Harris contends that the recording of Lepinay's IPRA interview is admissible under Federal Rule of Evidence 807, the residual exception to the hearsay rule. "A proponent of hearsay evidence must establish five elements in order to satisfy Rule 807: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice." *United States v. Moore*, 824 F.3d 620, 622 (7th Cir. 2016) (internal quotation marks omitted). Defendants do not contest the second and fifth elements, materiality and notice. And they make no argument regarding the fourth element, the interests of justice, which they describe as "not … an element at all, but instead a statement of the policy underlying the residual exception." Doc. 42 at 4. Defendants contest only the first and third elements, trustworthiness and probative value.

*Trustworthiness*. A hearsay statement satisfies Rule 807's trustworthiness element if it has circumstantial guarantees of trustworthiness "equivalent to those inherent in the more specific [hearsay] exceptions" in Rules 803 and 804. *United States v. Snyder*, 872 F.2d 1351, 1354 (7th Cir. 1989). The following factors, which "are neither exhaustive nor absolute," are pertinent to assessing trustworthiness under Rule 807:

> the character of the witness for truthfulness and honesty, and the availability of evidence on the issue; whether the testimony was given voluntarily, under oath, subject to cross-examination and a penalty for perjury; the witness' … motivation to testify … ; the extent to which the witness' testimony reflects his personal knowledge; whether the witness ever recanted his testimony; the

2

> existence of corroborating evidence; and, the reasons for the witness' unavailability.

*Moore*, 824 F.3d at 622-23 (internal quotation marks omitted).

The first trustworthiness factor—Lepinay's reputation for truthfulness—is inconclusive. Lepinay admitted in the interview that he possessed illegal drugs the day of the incident. Doc. 35 at 16. As Defendants recognize, however, any damage that fact does to Lepinay's credibility is counterbalanced by his unprompted, forthright admission to possession. Doc. 42 at 6. Neither party has presented any other evidence of Lepinay's reputation for truthfulness.

The second trustworthiness factor—whether the statement was given voluntarily, under oath, subject to cross-examination and penalty for perjury—strongly favors Harris, for Lepinay's interview was given voluntarily, under oath, and subject to penalty for perjury. Doc. 35 at 32. Although Lepinay was not cross-examined by counsel for an adverse party, the IPRA investigator drove most of the conversation by asking a lengthy series of clarifying questions after Lepinay gave a brief account of the incident. *Id*. at 12-32.

Defendants are correct that the interview took place in a car outside Lepinay's residence, rather than a more formal setting like a courtroom. *Id*. at 12. And it is true that, had Lepinay been formally cross-examined in a courtroom or at a deposition, his statements would be admissible under the Rule 804(b)(1) hearsay exception for the prior trial or deposition testimony of unavailable witnesses. *See* Fed. R. Evid. 804(b)(1) (excluding from the hearsay rule "[t]estimony that … was given as a witness at a trial, hearing, or lawful deposition" by a "declarant … unavailable as a witness"). But if Rule 807 required circumstantial guarantees of trustworthiness that were *identical* to those in Rule 804(b)(1), it would do no work; instead, the residual exception requires only "equivalent" circumstantial guarantees. Fed. R. Evid. 807(a)(1). That Lepinay gave a sworn statement under penalty of perjury and responded to many clarifying

3

questions from someone whose job it was to investigate allegations of police misconduct helps to establish that the circumstances of his statement were equivalent to those contemplated in Rule 804(b)(1).

Defendants object that the prospect of a perjury prosecution was illusory, given that, at the time of Lepinay's interview, no one had ever been prosecuted for making false statements to IPRA. Doc. 42 at 6-7. But Lepinay surely was unaware of the prosecution record for false statements made to IPRA. He swore in an affidavit, "under penalties provided by law," that the information in his statement was true and accurate, and there is no reason to think he took that oath less seriously than any other declarant. Doc. 35 at 32. Defendants also argue that Lepinay had little reason to fear a perjury prosecution because he knew that he was suffering from a terminal illness. Doc. 42 at 7. This is true, but on the whole, and as noted below, Lepinay's awareness of his dire medical condition weighs in favor of admitting his statements.

The third trustworthiness factor—Lepinay's motivation for testifying—also favors Harris. Lepinay may have been contemplating filing this suit at the time of the IPRA interview, but there is no indication that he had no reason to think that the interview would assist him in his lawsuit. In any event, mercenary motives could not have played much of a role in his decision to speak to IPRA, or even his decision to file suit. Lepinay knew that he had terminal liver cancer, stating that he "came home to die." Doc. 35 at 20. It is highly unlikely that, as a layperson, he realized that his interview could provide a basis for a family member to pursue his claim after his death. And while his interview is not admissible as a dying declaration under Rule 804(b)(2), both because his death was not sufficiently imminent when he gave the interview and his statements did not concern the cause or circumstances of his death, the fact that he knew he was likely to die before realizing any gain from his suit bolsters his credibility. *See Mattox v. United*

4

*States*, 156 U.S. 237, 244 (1895) ("[T]he sense of impending death is presumed to remove all temptation to falsehood.").

Defendants do not dispute that the fourth and fifth trustworthiness factors—whether the statements reflect Lepinay's personal knowledge and whether he ever recanted his testimony—weigh in Harris's favor. The sixth factor weighs against Harris, as there is no corroborating evidence of the truth of Lepinay's statements. (But this works in Harris's favor on the probative value element, as explained below.) The last factor, the reason for Lepinay's unavailability (his death), casts no doubt on the trustworthiness of his testimony.

Having considered the relevant factors, the court concludes that Lepinay's statements to the IPRA investigator have circumstantial guarantees of trustworthiness equivalent to those contemplated in the enumerated Rules 803 and 804 hearsay exceptions. His statements were voluntary, sworn, made under penalty of perjury, and subject to extensive questioning, and the knowledge that he had an advanced terminal illness diminished any motivation he might have had to distort the truth. *See United States v. Doerr*, 886 F.2d 944, 956 (7th Cir. 1989) (holding that grand jury testimony, which was not subject to cross-examination, was admissible under the residual exception because it had circumstantial guarantees of trustworthiness equivalent to those under the enumerated Rule 804(b) hearsay exceptions); *United States v. Clarke*, 2 F.3d 81, 84 (4th Cir. 1993) (same, reasoning that although "[t]he guarantees [of trustworthiness] are not identical to 804(b)(1), … they are in their totality equivalent").

*Probative Value*. Rule 807's probative value element is satisfied where the hearsay statement is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(3). According to Lepinay, three other people were present in the apartment's other rooms when the police arrived.

5

Doc. 35 at 14.  Upon entering, some of the officers searched the other rooms and brought those individuals into the living room, where they witnessed at least some of the force used against Lepinay.  *Ibid*.  However, as Harris observes, those individuals were not in the living room when the officers first entered, and thus could not have seen whether Lepinay did anything to provoke the use of force or whether the officers simply "bum rushed" Lepinay, as he maintained.  Doc. 35 at 16; Doc. 44 at 2.  That is significant, as important considerations in the Fourth Amendment excessive force cases include whether the plaintiff "pose[d] an immediate threat to the safety of the officers or others, and whether he or she [was] actively resisting arrest or attempting to flee or evade arrest."  *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 724 (7th Cir. 2013).  Additionally, Harris's counsel has been unable to locate any of the three potential witnesses.  Doc. 35 at 4.  Given these circumstances, Lepinay's statements are more probative than other evidence Harris could obtain through reasonable efforts.

Defendants object that Harris has not "met her burden" to show that the three other witnesses are truly unavailable.  Doc. 42 at 10.  But based on Lepinay's interview, it would appear that the apartment was "like a boarding home" in which residents rented rooms on a short-term basis.  Doc. 35 at 24.  Harris notes that one of the witnesses moved out of the apartment the next day without leaving a forwarding address.  Doc. 44 at 12.  It therefore stands to reason that Harris has been unable to locate those witnesses "through reasonable efforts."  Fed. R. Evid. 807(a)(3).  In any event, even if Harris could locate those witnesses through reasonable efforts, their testimony would not be probative on the key question of what happened between Lepinay and the officers before those witnesses were brought into the room.

Defendants also argue that Harris cannot show that Lepinay's statements are more probative than other available evidence because the officers will be available to testify about

what occurred when they entered the apartment and how they restrained Lepinay. Doc. 42 at 10. That argument cannot be right. While Lepinay maintained he was jabbed in the stomach with a rifle, taken to the ground, and kneed in the back, the officers "deny that Plaintiff was struck at any time." Doc. 19 at ¶ 17. A live adverse party's ability to show up and deny a deceased party's statement does not, standing alone, bar the admission of statements that would otherwise satisfy the requirements of Rule 807. *See United States v. DeLeon*, 2009 WL 3020145, at *4 (D. Md. Sept. 21, 2009) (holding that a child victim's recanted statements, which the prosecution sought to admit, were more probative than any other evidence because the only other living witness to the alleged assault was the defendant), *aff'd*, 678 F.3d 317 (4th Cir. 2012), *vacated on other grounds*, 133 S. Ct. 2850 (2013). In these kind of "he said, she said" cases, a jury should determine whose account is more credible.

At argument, Defendants cited *Stolarczyk ex rel. Estate of Stolarczyk v. Senator Int'l Freight Forwarding, LLC*, 376 F. Supp. 2d 834 (N.D. Ill. 2005), for the proposition that the court should deny admission of a deceased plaintiff's statements under the residual exception where an adverse witness could provide evidence on the same points. True, *Stolarczyk* did note that an employment discrimination plaintiff's statements were not "the only evidence available" because the individual accused of discriminating could testify. *Id*. at 842. But the court mentioned this fact only in passing; the chief ground for its exclusion of the statements was that the plaintiff made them in an EEOC charge, which was, by its nature, "made in anticipation of litigation" and therefore "lack[ed] sufficient guarantees of trustworthiness to be excepted from the hearsay rule." *Id*. at 841 (internal quotation marks omitted). That is not the case here, where Lepinay, a layperson undoubtedly unfamiliar with Rule 807, had no reason to think his IPRA interview would be a factor in a lawsuit he had yet to file. And if this difference could not fairly

7

distinguish *Stolarczyk* from this case, the court would respectfully disagree with *Stolarczyk*'s analysis.

\* \* \*

In sum, Harris has met all of the required elements for admissibility under Rule 807. Her motion to admit the recording of Lepinay's sworn IPRA interview accordingly is granted.

February 13, 2018

_____
United States District Judge